■ In the Matter of MELVIN SCHNEIDER, Respondent, v DUNKIRK ICE CREAM et al., Appellants, and ROYAL INSURANCE COMPANY, Respondent. WORKERS' COMPENSATION BOARD, Respondent. [754 NYS2d 409] —Spain, J. Appeal from a decision of the Workers' Compensation Board, filed July 13, 2001, which ruled that Liberty Mutual Insurance Company is responsible for claimant's 1996 claim for workers' compensation benefits.

Claimant was a truck driver for Dunkirk Ice Cream (hereinafter the employer) when, on October 6, 1993, he sustained a work-related injury to his back (hereinafter the 1993 accident). A C-2 report of injury was filed, and the employer's workers' compensation carrier, Liberty Mutual Insurance Company, paid for claimant's medical expenses which consisted of chiropractic care for his lower back from Mark Kutner from October 1993 until November 1995, when that case was closed.

Meanwhile, in November 1994, Liberty ceased being the employer's carrier and was replaced by Royal Insurance Company, which remained the employer's carrier until August 10, 1996. On January 25, 1996, claimant sustained another back injury, which he promptly reported to his employer, in a second accident while working for the employer (hereinafter the 1996 accident). The employer correctly filed a C-2 report of injury with its current carrier, Royal, which was received on February 7, 1996, although it was not filed with the Workers' Compensation Board until May 28, 1998. Claimant remained at work and the next day was treated by Kutner, who continued to treat him until January 1998. Unaware that the employer had a new carrier, i.e., Royal, Kutner continued to submit medical reports and bills (i.e., C-4 reports) for the 1996 accident to Liberty; Liberty apparently failed to recognize that a second injury had occurred in 1996 and paid the bills without objection for over two years. Claimant continued to work for the

employer until it ceased operations and closed in February or March 1996; he collected unemployment for approximately six months and, in March 1997, started his own truck company, but ceased working in February 1998 due to severe pain in his back. On April 27, 1998, claimant began treatment with Jeffrey Lewis, a neurosurgeon, who determined that he was totally disabled; claimant claimed lost wages from that date.

The C-4 reports submitted for medical services for the 1996 accident correctly listed the date of injury as January 25, 1996, and listed diagnostic codes which were not the same as those listed on the C-4 reports previously submitted for the 1993 accident, although the section designated for history or evidence of preexisting injury was left blank on the C-4 reports submitted for the 1996 accident. The statements of how the injury occurred were similar on the C-4 reports submitted for the 1993 accident and those submitted after the 1996 accident, both describing an incident in which a rear door fell off the truck; in the 1993 reports, it describes the injury-producing event as claimant trying to stop a falling door while, in the 1996 report, it relates that injury resulted when claimant picked up a door and put it back in the truck. Kutner's C-4 reports for the 1996 accident were not filed with the Board or provided to Royal until sometime in 1998.

In January 1998, Liberty secured an independent medical examination of claimant related to the 1993 accident, which alerted it to the fact that claimant had actually sustained two different work-related injuries, one in 1993 and one in 1996. Shortly thereafter, Liberty filed a notice of treatment issues/disputed bill issues to cease medical care related to the 1993 accident (form C-8.1A) and notices to reopen the 1993 case (form RB-679) and disputing medical bills (form C-8.1B), raising the issue for the first time that there was a new injury for which Liberty was not the proper carrier. The 1996 accident was assigned a separate case number from that assigned the 1993 accident, claimant filed a claim for compensation on April 10, 1998 with the Board, Royal received notice in May 1998 and the 1993 accident claim was reopened on June 10, 1998.[1] A hearing was held on February 22, 1999 at which Liberty contended that, inasmuch as its policy covering the employer expired in 1994, it was not the carrier responsible for coverage of the 1996 accident. Royal argued that any claim against it was untimely under Workers' Compensation Law § 28 based upon claimant's failure to file a notice of claim with the Board

---

1. By decision dated December 16, 1998 a Workers' Compensation Law Judge authorized an MRI for the 1993 case.

within two years of the accident. Claimant was the only witness called to testify.

The Workers' Compensation Law Judge (hereinafter WCLJ) determined that claimant sustained a work-related injury to his back on January 25, 1996 for which Royal had received timely notice (the C-2 report received on February 7, 1996) and concluded that the claim had been timely filed pursuant to Workers' Compensation Law § 28. The WCLJ reasoned that in paying claimant's medical expenses, Liberty had acted as the employer's agent in making advance payments under Workers' Compensation Law § 28, foreclosing any defense by the employer or Royal based on claimant's failure to file a timely claim. Upon Royal's request for review, a panel of the Board reversed and held that Liberty was the carrier liable for the 1996 accident. The decision incorrectly states that Liberty was the employer's carrier until July 1996, i.e., at the time of the January 1996 accident, and concluded that Liberty's advance payments under Workers' Compensation Law § 28 obviated any challenge to the timeliness of the claim.

Upon Liberty's request for full Board review, the Board held that despite the fact that Royal was the carrier of record at the time, Liberty is responsible for the 1996 accident because, through its own fault, it made advance payments of compensation to claimant by paying his medical expenses.[2] The employer and Liberty now appeal.

Workers' Compensation Law § 28 provides, in relevant part, that "[t]he right to claim compensation * * * shall be barred * * * unless within two years after the accident * * * a claim for compensation shall be filed with the chair[ ]." It further provides that the statute of limitations is waived by the employer and carrier's failure to raise an objection at the first hearing to claimant's failure to timely file the claim (see Matter of Skippon v T.M. Kenney's Inc., 296 AD2d 634, lv denied 99 NY2d 502) or by an advance payment of compensation by the employer or its carrier (see Matter of Romano v Franklin Gen. Hosp., 108 AD2d 971). It is correct to state that under Workers' Compensation Law § 28, remuneration or payments by an employer or its carrier in the form of wages, medical treatment or other compensable expenses constitute "advance payment[s]" which trigger the exception to the two-year, claim-filing requirement, provided the payments were made in recognition

---

2. While the Board's decision incorrectly states that Liberty remained the employer's carrier until November 30, 1995, rather than November 30, 1994, this discrepancy had no bearing on its decision regarding coverage for the January 1996 accident.

or acknowledgment of liability under the Workers' Compensation Law (*see Matter of Robinson v New York City Dept. of Social Servs.*, 266 AD2d 613; *Matter of Kaschak v IBM Corp.*, 256 AD2d 830, 831; *Matter of Manzo v Twin Oaks Rest.*, 127 AD2d 919, 920-921; *Matter of Romano v Franklin Gen. Hosp.*, supra at 972; *Matter of Schultz v Voltro Distribs.*, 92 AD2d 990, 991; *Matter of McLaughlin v Ludlow Valve Co.*, 64 AD2d 305, 306; *Matter of Elenz v American Mach. & Foundry*, 34 AD2d 713, 714; *Matter of Smith v City of New York*, 23 AD2d 608, 609, *lv denied* 16 NY2d 485; *see also Matter of McCutcheon v Public Serv. Dept.*, 290 AD2d 679, 680; *Matter of Mortenson v United Parcel Serv.*, 185 AD2d 487, 488). However, the statutory "advance payment" exception—even if applicable—merely precludes reliance on the statute of limitations defense available under Workers' Compensation Law § 28, i.e., the advance payment tolls the two-year claim-filing requirement. Liberty's advance payments do not, by contrast, foreclose Liberty from asserting other defenses, such as lack of coverage, or establish its liability for the 1996 accident (*see e.g. Matter of Del Vecchio v Del Vecchio*, 11 AD2d 574, 575).

It was undisputed that Liberty did not have a policy of workers' compensation insurance which covered the employer on January 25, 1996 (the date of the second accident) and that Royal was the carrier of record on that date. Thus, while under Workers' Compensation Law § 28 Liberty could not defend against the 1996 claim by asserting the untimeliness of the "claim for compensation" filed with the Board, Liberty was entitled to, and did, raise the issue of noncoverage. The Board's reliance on the "advance payment" exception to the claim-filing requirement of Workers' Compensation Law § 28 to reject Liberty's defense of noncoverage was clearly erroneous, as that statute does not address or govern Liberty's right to raise other defenses, i.e., advance payments do not create coverage where none exists.

Further, the Board's reliance on *Matter of Druziak v Town of Amsterdam, Cranesville Fire Dept.* (209 AD2d 870, *lv denied* 85 NY2d 809)—to find Liberty to be the proper carrier for the 1996 claim due to its payment of medical bills submitted and its failure to check its own files—is misplaced. *Druziak* involved a carrier which failed to raise the defense of noncoverage at the hearing, resulting in the claim being established, benefits awarded and the case closed. This Court affirmed the Board's rejection of the carrier's motion to rescind the WCLJ's decision and restore the case based on purportedly newly discovered evidence pertaining to coverage, agreeing that the evidence of

noncoverage was merely belatedly obtained due to the carrier's failure to check its files against the forms forwarded to it by the Board and did not constitute newly discovered evidence (*id.*). Here, however, Liberty raised the issue of coverage at the first hearing, albeit after paying medical expenses for two years, and the evidence of noncoverage was uncontroverted. To the extent that the Board's decision could be interpreted as relying on principles of estoppel based on Liberty's payments without objection of medical expenses for in excess of two years, there has been no showing that the elements of estoppel have been established (*see Matter of Hayden v S & W Meat & Poultry,* 221 AD2d 823, 824-825). Thus, in our view, there was no basis in law or fact for the Board to determine that Liberty's advance payment under Workers' Compensation Law § 28 established its coverage of and responsibility for the 1996 accident. However, we also emphasize that while Liberty submitted uncontroverted proof that it did not have a policy in effect covering the employer at the time of the 1996 accident, the issue of apportionment, if any, between the carriers, which was raised but not decided at the hearing, is not determined on this appeal.

Extending this analysis, we further find that Liberty's payment of claimant's medical expenses submitted by his treating physician constituted an "advance payment" of compensation under Workers' Compensation Law § 28 by the employer on whose behalf they were made (*see Matter of Romano v Franklin Gen. Hosp.,* 108 AD2d 971, *supra*; *Matter of Brown v Village of Maybrook,* 59 AD2d 817; *cf. Matter of Ecret v Holiday Inn,* 253 AD2d 916, 917, *lv denied* 92 NY2d 817). While recognizing that the employer correctly sent the C-2 injury report to Royal, its carrier at the time of the 1996 accident, and was not involved in incorrectly submitting C-4 reports to Liberty, Liberty was nonetheless acting as the employer's agent, believing that it was continuing to pay medical expenses related to the 1993 accident for which it was the employer's carrier. Consequently, under settled law, the employer and its carrier, Royal, are foreclosed by Workers' Compensation Law § 28 from relying on the defense that the claim was not timely filed within two years of the 1996 accident, as the WCLJ correctly ruled after the hearing.

To the extent that Royal has urged the unfairness in holding it responsible for a claim for which the Board (and Royal) did not receive a timely claim for compensation (and which has been managed by another carrier for over two years), we would note that Royal received a C-2 report from the employer shortly

after the accident. The end result is contemplated by this statute and is not materially different from cases in which the employer's more direct actions (without its carrier's involvement) in making advance payments in the form of wages or other compensation operate to toll the two-year claim-filing requirement and preclude both the employer and its carrier from relying on this defense (*see Matter of Salemi v Farrand Opt. Co.*, 302 NY 837; *Matter of Hamilton v Village of Lynbrook*, 284 NY 613; *Matter of Robinson v New York City Dept. of Social Servs.*, 266 AD2d 613, 613-614, *supra*; *Matter of McLaughlin v Ludlow Valve Co.*, 64 AD2d 305, *supra*; *Matter of Brown v Village of Maybrook, supra* at 817).

Mercure, J.P., Crew III, Peters and Lahtinen, JJ., concur. Ordered that the decision is annulled, without costs, and matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision.